**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TRACIE RENFROE AND ANDREW STAKELUM,** | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | |
| **MARISSA GRABOWSKI,** | § § | **Case No. _____** |
| *Defendant.* | § § | |

**COMPLAINT FOR DEFAMATION**

Defendant Marissa Grabowski is a former King & Spalding LLP ("K&S") associate whose employment was terminated due to performance issues. On July 4, 2026, through a public internet post on LinkedIn, Grabowski published what appears to be a draft petition containing blatantly false and defamatory statements regarding Plaintiffs Tracie Renfroe and Andrew Stakelum, both of whom are current K&S partners.

Renfroe and Stakelum are filing this defamation action against Grabowski to protect their personal and professional reputations and to refute Grabowski's falsehoods. In particular, Grabowski falsely alleges that Stakelum sexually assaulted her in June 2025 and that Renfroe knowingly ignored Grabowski's report of the alleged assault. As reflected in Renfroe's and Stakelum's sworn declarations attached as **Exhibits A and B** respectively, no such assault ever occurred, and Grabowski never complained of any alleged assault to Renfroe during her employment.

While Grabowski signed a separation agreement in November 2025 as part of her termination from K&S with a complete release of any such claims against Plaintiffs, the release is not being raised in this lawsuit. Renfroe and Stakelum instead seek to make abundantly clear on

- 1 -

the record and under oath that Grabowski's allegations are false and she must be held accountable.

## I. PARTIES

1.　　Plaintiff Tracie Renfroe is a Texas citizen residing in Harris County, Texas.

2.　　Plaintiff Andrew Stakelum is also a Texas citizen residing in Harris County, Texas.

3.　　Defendant Marissa Grabowski is, upon information and belief, a citizen of California who lives in Los Angeles, California as reflected by her LinkedIn profile and communications she made with a California work address and/or about living in California.

## II. JURISDICTION AND VENUE

4.　　This Court has personal jurisdiction over Grabowski under Texas's long-arm statute because this action arises from tortious conduct committed, in whole or in part, in Texas. Tex. Civ. Prac. & Rem. Code § 17.042(2). Namely, Grabowski purposefully defamed Texas residents.

5.　　A federal court has original jurisdiction over an action pursuant to 28 U.S.C. § 1332(a) if: (1) the parties have complete diversity of citizenship; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has original jurisdiction over this action because both requirements of § 1332(a) have been met. Plaintiffs are citizens of Texas and Grabowski is, upon information and belief, a citizen of California. As set forth further below, Plaintiffs have been injured as a result of Grabowski's defamatory acts and are seeking damages in excess of $75,000.

6.　　Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving rise to this Complaint occurred in Harris County, Texas.

### III. FACTUAL BACKGROUND

**A.     K&S Hires Grabowski as an Associate in October 2023.**

7.     In October 2023, Grabowski began working at K&S as an associate in the Product Liability & Mass Torts practice group in its Houston, Texas office.  She had previously worked as a summer associate at K&S for two summers while she was in law school.

8.     Renfroe, who has been practicing law for more than 41 years and who has been with K&S since 2006, is the Managing Partner of K&S's Houston office and is Co-Chair of the firm's Product Liability & Mass Torts practice group to which Grabowski was assigned during Grabowski's employment with K&S.

9.     Stakelum, who has been practicing law for 20 years and has been with K&S since 2014, was a designated Talent Partner for Texas associates in the Product Liability & Mass Torts practice group when Grabowski joined the firm as an associate in October 2023.  As a Talent Partner, Stakelum oversaw performance reviews, utilization, and staffing for such associates.

10.     Further, in his capacity as a Talent Partner during part of Grabowski's employment with K&S, Stakelum was responsible for providing performance feedback to Grabowski on cases and matters she was working on with him, as well as communicating feedback from other attorneys at the firm regarding Grabowski's work on cases and matters she was working on with those attorneys.  At times, Grabowski did not accept the feedback in a constructive manner and reacted with hostility and sometimes anger toward Stakelum.

**B.     During Her Active Employment with K&S, Grabowski Never Accused Stakelum or Renfroe of the Misconduct She Now Publicly Alleges.**

11.     Renfroe and Stakelum worked on several matters with Grabowski during her two-year employment with K&S.  During that same period of active employment with the firm, Grabowski engaged in multiple conversations with various members of the practice group, Human

Resources ("HR"), and Lawyer Talent Development about various workplace issues. In none of those conversations did Grabowski raise the assault allegations she now publicly levies against Stakelum. Indeed, both Renfroe and Stakelum attempted to address Grabowski's unrelated workplace concerns when she raised them—issues that *never* involved allegations of assault or ignoring a report of assault.

12. For example, in October 2024, Grabowski complained to Stakelum because she would not be attending trial for a case Stakelum and Renfroe were handling. In response to Grabowski's misguided concerns that she had been inappropriately removed from the trial team, Stakelum explained that not every associate assigned to a matter is able to attend trial, that junior associates generally did not attend trial if it involved travel, and that there would be other opportunities for her to assist with the trial.

13. In a follow-up conversation the next day, Grabowski accused Stakelum of disrespecting her, stating his tone was inappropriate because he was "a white male" speaking to "a diverse female" in a negative way.

14. At no point during this conversation did Grabowski accuse Stakelum of sexual harassment or assault.

15. After the conversation, Grabowski continued to sporadically work on the case and did not raise any allegations of sexual harassment or assault against Stakelum to Renfroe.

16. Approximately eight months later, around June 6, 2025, Grabowski emailed Renfroe about her workload and perceived staffing matters within the Product Liability & Mass Torts practice group. Grabowski did not accuse Stakelum of sexual assault in her email to Renfroe—or even mention him at all. In her follow-up communications with Renfroe, Grabowski instead raised her ideas about organizational improvements within the practice group.

- 4 -

17.     On June 20, 2025, Grabowski, then a second-year associate, emailed Stakelum regarding various issues related to workflow and assignments on a case team Stakelum was leading.  In that email, Grabowski voiced her views regarding Stakelum's "lack of leadership." Specifically, Grabowski wrote to Stakelum:

> "Third, and finally, you have lost any of my remaining patience and professional respect. We've had multiple conversations about workflow, and I have worked tirelessly to make your teams run effectively. You have disregarded my suggestions at every turn, and we continue to revisit the same situations year after year. Your lack of leadership has become an impediment to my legal development and threatens my professional reputation."

18.     In the same June 20, 2025 correspondence, Grabowski asked to be moved to another case team that did not include Stakelum or another senior associate in the Product Liability & Mass Torts practice group.  Grabowski raised no concerns regarding any alleged harassment, assault, or any other misconduct by Stakelum at this time. Stakelum, and not Grabowski, escalated Grabowski's correspondence to Lawyer Talent Development.

19.     On July 11, 2025, a female partner in the Product Liability & Mass Torts Practice Group and a female member of the HR team met with Grabowski to discuss her email to Stakelum and inform her that she would be moved to a different team and Talent Partner.  During the meeting and in her follow-up email, Grabowski again made no allegation that Stakelum had sexually assaulted her or that Renfroe had ignored any such report.

**C.     Grabowski's Employment Is Plagued by Performance Issues, Leading to Her Separation from K&S in October 2025.**

20.     During her employment, Grabowski struggled to consistently meet the firm's performance expectations.

21.     Multiple partners and associates raised concerns regarding Grabowski's judgment, professionalism, and perception of her own contributions.

22.    For example, as part of Grabowski's 2025 performance review, 12 lawyers across 5 offices and 3 practice groups who had worked with Grabowski submitted written reviews regarding her substantive legal performance and professional judgment, a sampling of which follows:

- Only one attorney indicated that they were willing to work with Grabowski again "without reservation," while seven other attorneys indicated they were only willing to work with her again "if other options were not available."

- Three attorneys responded that they were unwilling to work with Grabowski again on any future matters.

- Specific feedback for Grabowski revealed issues with her substantive legal performance, including that she "very rarely deliver[ed]"; partners had to follow up with her "repeatedly" on assigned tasks; she did "not take ownership of the tasks she was assigned"; she could not be relied on "for even first drafts of briefs" given her constant failure to "deliver acceptable work product"; she failed to meet internal deadlines regularly, which resulted in "the rest of the team working late hours and weekends to make up the difference"; and she produced work product that was so poor that it had to be completely rewritten.

- Other feedback for Grabowski highlighted issues with her professionalism and willingness to receive constructive feedback in a professional manner. One reviewer stated that Grabowski "can be defensive when given feedback, making it difficult to have discussions about improvement," noting that "[h]er reputation on feedback has chilled some associates from giving her feedback at all."[1]

23.    Grabowski's perception of her contributions to the firm was wholly inconsistent with the feedback of those who reviewed her work. For example, in a June 20, 2025 email to Stakelum regarding her assignments on a case team, Grabowski claimed that she "exhibited that [she] can work with anyone on anything and provide the highest quality work every time on time."

24.    Because of her continued performance deficiencies, K&S informed Grabowski on October 30, 2025, that her employment with the firm would be ending. In late October and

---

[1] None of the quoted representative feedback contained herein came from Stakelum, who was not involved in Grabowski's 2025 performance review, or Renfroe, who did provide written feedback for Grabowski's 2025 performance review but had not worked directly enough with Grabowski that year to comment substantively on her work product.

November 2025, Grabowski had several discussions with members of Lawyer Talent Development and HR, including conversations in which Grabowski requested an increased separation payment based on her purported "contributions to the firm." Notably, however, Grabowski did not raise any claim that Stakelum had sexually assaulted her, that Renfroe ignored any complaint, or that she had been subjected to unlawful discrimination or harassment during her employment with the firm.

25. On November 25, 2025, Grabowski executed a standard Confidential Separation Agreement and General Release ("Separation Agreement") that governed the terms of Grabowski's separation from K&S.[2]

26. Among other things, the Separation Agreement provided for a paid "Transition Period."

27. Additionally, under the terms of the Separation Agreement, K&S agreed to provide Grabowski with additional benefits if she executed another release at the end of the Transition Period ("Supplemental Release").

28. At some point during the Transition Period, Grabowski moved to Los Angeles, California, where she obtained a position with Los Angeles-based law firm, Miller Barondess LLP and began her employment on or around the first day after the Transition Period ended.

**D. On February 6, 2026, Grabowski Accuses Stakelum and Renfroe of Harassment and Assault for the First Time.**

29. On January 26, 2026, Grabowski proposed an "addendum" to the Separation Agreement executed in November 2025, requesting an additional $300,000 in exchange for executing the Supplemental Release. K&S did not agree to sign Grabowski's proposed addendum.

---

[2] As noted above, though the Separation Agreement contained a complete release barring any claims that Grabowski could assert against Renfroe and Stakelum stemming from her employment with K&S, the release is not a part of this lawsuit.

30. On February 6, 2026, during the Transition Period, Grabowski continued her campaign to elicit more money by threatening to "engage in litigation." This this is not the first time that she sought additional severance pay. Concurrent with this threat, Grabowski asserted for the first time, that Stakelum had sexually harassed and assaulted her and that "firm leadership" knew about it and had failed to take action.

31. K&S immediately investigated Grabowski's allegations and found no evidence corroborating them or indicating that they have any factual basis. Further, there is no corroborating evidence indicating that Grabowski ever accused Stakelum of harassment, assault, or any sexual misconduct during the term of her employment nor reported such allegations to Renfroe.

32. Following Grabowski's first accusations against Stakelum and "firm leadership" in February 2026, Grabowski then engaged in a series of bizarre behaviors and puzzling communications with K&S personnel.

33. For example, on February 12, 2026, K&S received an email purportedly from "M. Benjamin Bancroft III (Tripp)" the "managing partner" at "Ouest Holdings" demanding a response to Grabowski's emails. On February 18, 2026, "Tripp Bancroft" again emailed K&S claiming that Grabowski had authorized his firm to "go the distance if necessary." Tripp further directed K&S to direct all communications through "him."

34. To date, K&S's attempts to corroborate that "Tripp Bancroft" is an actual person and licensed attorney have been unsuccessful. After K&S's Associate General Counsel, asked Grabowski for clarification of Tripp Bancroft's role and to arrange a conversation with him, all communications from Bancroft on Grabowski's behalf ceased.

35. Throughout the spring and early summer of 2026, Grabowski began sending correspondence to certain K&S personnel from her new firm email address and through letters

sent on her firm letterhead wherein she purported to represent "Jane Doe" in various claims against Plaintiffs and other K&S partners and employees.  Grabowski sent multiple versions of draft petitions alleging various causes of action against Plaintiffs and up to nearly 50 other K&S employees—none of which have ever been filed.

36.     Based on her prior communications with K&S personnel regarding these allegations and based on the factual allegations in these draft petitions, it became abundantly clear that "Jane Doe" was in fact Grabowski.

37.     Neither Grabowski's February 6, 2026 correspondence nor any of her subsequent communications provided any details regarding the alleged assault or her alleged reporting of said assault (such as when, how, and to whom Grabowski allegedly reported the assault, or other relevant corroborating information).  In response to multiple inquiries requesting such details, Grabowski has refused to provide any.

**E.      On July 4, 2026, Grabowski Publishes Defamatory Statements Concerning Stakelum and Renfroe on LinkedIn.**

38.     On July 4, 2026, Grabowski published a LinkedIn post announcing her "retirement era."  Attached to the post was a 52-page draft petition accusing Stakelum of sexually assaulting her and Renfroe of failing to take action in relation to that alleged assault.  As previewed above, those accusations are completely false.  A true and correct copy of the subject draft petition is attached to this Complaint as **Exhibit C**.



39.     Grabowski is well aware that her allegations lack factual and legal merit and are false and defamatory because, at a minimum, she was informed in a letter from Plaintiffs' counsel dated April 19, 2026, which reminded Grabowski of her obligations under the Separation Agreement and Release, her ethical obligations under the law, and the legitimate, non-

discriminatory reasons for her termination from K&S.

## IV. CAUSES OF ACTION

### COUNT I – Defamation Pursuant to Tex. Civ. Prac. & Rem. Code § 73.001

40.    Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs as if fully set forth herein.

41.    On July 4, 2026, Grabowski published false written statements on LinkedIn accusing Stakelum of sexually assaulting her and Renfroe of knowingly ignoring that alleged assault.

42.    These statements expressly accuse Stakelum of criminal sexual misconduct and accuse Renfroe of professional misconduct and dishonesty.  Ex. C ¶¶ 2–3, 46 and 47.  These statements are false, defamatory, and have no basis in fact.

43.    Grabowski's post is available worldwide to anyone with a LinkedIn profile. Multiple people in Texas and elsewhere saw Grabowski's LinkedIn post.  At least one person who appears to live in Louisiana reacted to it with a "care" emoji.

44.    Grabowski knew these accusations were false when she published them. Stakelum never sexually assaulted Grabowski, and Renfroe never ignored any report of sexual assault because no such assault (nor any report of an assault) occurred.  Grabowski published these false and defamatory accusations with the specific intent to cause substantial injury, including reputational harm, to Plaintiffs.

45.    Accusing a practicing attorney of sexual assault and accusing a law-firm leader of knowingly ignoring that conduct are statements that naturally tend to injure Plaintiffs in their profession and expose them to public hatred, contempt, ridicule, and financial injury, and also tend to impeach Plaintiffs' honesty, integrity, virtue, and reputation.

46.    Furthermore, Grabowski's statements unambiguously attempt to charge Stakelum with a crime and sexual misconduct and charge Renfroe with dishonesty and fraud and are falsehoods that are intended to and have injured both Stakelum and Renfroe in their office, business, profession, and occupation.  As such, Grabowski's statements constitute defamation per se under Texas law. *Benson v. Guerrero*, 702 S.W.3d 775, 786 (Tex. App.—Houston [1st Dist.] 2024, no pet.).

47.    As a direct and proximate result of Grabowski's defamatory statements, Plaintiffs have suffered and will continue to suffer damages.  In particular, as attorneys whose careers depend on their integrity and fitness as officers of the court, Grabowski's false accusations against Plaintiffs are inherently damaging to their reputations and standing in the legal community and have caused and will continue to cause grave personal and professional harm.  Moreover, false accusations related to sexual misconduct are among the most damaging forms of defamation because they predictably inflict severe reputational injury and significant mental anguish.  Thus, as a direct and proximate result of Grabowski's defamatory statements, Plaintiffs have suffered and will continue to suffer damages in excess of the jurisdictional limits of this Court.  *See, e.g.*, *Hawbecker v. Hall*, 276 F. Supp. 3d 681, 688 (W.D. Tex. 2017) (awarding $250,000 in general damages for defamatory statements related to sexual misconduct); *Amell v. Van Pelt*, 729 S.W.3d 70, 91 (Tex. App.—Houston [14th Dist.] 2025, no pet.) (upholding $140,000 award for reputational harm for defamatory statements to clients that the plaintiff was performing his job in an unethical manner and making material misrepresentations to the clients).

48.    Plaintiffs are therefore entitled to recover actual, compensatory, and consequential damages, including but not limited to damages for reputational injury and mental anguish, as well as permanent injunctive relief.

49.     Plaintiffs' injuries result directly from Grabowski's malice and knowledge of the statements' falsity or disregard for the truth, which entitles Plaintiffs to exemplary damages under § 41.003(a) of the Texas Civil Practices and Remedies Code.

50.     Plaintiffs are also entitled to injunctive relief because Grabowski's defamatory statements and false allegations have caused and will continue to cause irreparable harm to Plaintiffs' careers, reputations, and personal and professional relationships, as well as other injuries that cannot be fully remedied by monetary damages alone.

## V. CONCLUSION

WHEREFORE, Plaintiffs Tracie Renfroe and Andrew Stakelum request a judgment against Defendant Marissa Grabowski:

a. Awarding actual, compensatory, and consequential damages arising from Defendant Marissa Grabowski's defamatory statements against Plaintiffs Tracie Renfroe and Andrew Stakelum;

b. Awarding exemplary damages under § 41.003(a) of the Texas Civil Practices and Remedies Code;

c. Awarding permanent injunctive relief as permitted by law, including an order requiring Grabowski to remove the draft petition containing the defamatory statements attached to her LinkedIn post and prohibiting Grabowski from further posting or disseminating such false statements on LinkedIn or elsewhere;

d. Awarding reasonable attorneys' fees and costs as recoverable under applicable law;

e. Awarding pre-judgment and post-judgment interest as permitted by law; and

f. Providing all other and further relief, legal or equitable, that this Court deems proper.

- 14 -

Dated: July 6, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Michelle Pector*

**Michelle Pector**
Michelle.pector@morganlewis.com
State Bar No. 24027726
**T. Cullen Wallace**
Cullen.wallace@morganlewis.com
State Bar No. 24063991
1000 Louisiana Street
Houston, Texas 77002
Tel. 713.890.5000
Fax. 713.890.5001

**Grace Speights**
grace.speights@morganlewis.com
*Pro hac vice forthcoming*
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel. 202.739.3000
Fax. 202.739.3001

*Attorneys for Plaintiffs Tracie Renfroe and
Andrew Stakelum*